

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EDP:WPC/GN
F.#2019R01513

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 2, 2022

**By ECF**

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

           Re:    United States v. Huan Di Huang
                 Criminal Docket No. 21-351 (MKB)

Dear Judge Brodie:

        The government respectfully submits this sentencing letter regarding the defendant Xuan Di Huang, who is scheduled to be sentenced on December 8, 2022, at 10:00 a.m.  On August 9, 2022, Huang, the owner of Zhiqing Social Adult Day Care Center LLC ("Zhiqing SADC"), pleaded guilty, pursuant to a written plea agreement, to paying cash kickbacks to the Medicaid recipients who attended her social adult day care center.

        According to the pre-sentence investigation report ("PSR") and the plea agreement, the defendant has a total offense level under the United States Sentencing Guidelines (the "Guidelines") of 21 and a Criminal History Category of I, which yields a range of imprisonment of 37 to 46 months.  See PSR at ¶¶ 27, 30 and 61.

        The plea agreement provides that the government would "make no motion for a sentence above the low end of the Guidelines as determined by the Court."  A sentence of imprisonment at the low end of the Guidelines—37 months—would accomplish the goals of Section 3553(a) of Title 18 of the United States Code: namely, to reflect the seriousness of these offenses, promote respect for the law, provide just punishment, general deterrence and avoid unwarranted sentencing disparities.

I.    Procedural Background

On August 27, 2020, Huang was arraigned on a complaint charging her with violating the anti-kickback statute by paying cash kickbacks to Medicaid recipients who attended the social adult day care center she owned.  Medicaid, through managed long-term care, paid Huang for each Medicaid recipient who attended her day care center.  See Complaint at Docket Entry ("DE") #1.  Huang then met and proffered with the government while accompanied by her attorney.

On July 7, 2021, Huang was arraigned on a single-count indictment.  Huang was charged with a violation of the anti-kickback statute.  See Indictment at DE #17.

On August 9, 2022, Huang pleaded guilty, pursuant to a written plea agreement, to the sole count of the indictment before Your Honor.  In the plea agreement, Huang stipulated to the Guidelines estimate stated in the agreement, which is the same as in the PSR.  Huang also stipulated to a restitution amount of $1,499,000 and agreed to forfeiture in the amount of $1,499,000.

II.    The Offense Conduct

Huang was an owner, president and chief executive of the Zhiqing Social Adult Day Care, LLC, which operated an adult day care center in Flushing, New York.  Zhiqing SADC was registered as a Medicaid managed care provider, and the individuals who attended Zhiqing SADC were Medicaid recipients.  Medicaid, through managed long term care plans, paid Zhiqing SADC a flat fee for each Medicaid recipient who attended the facility.  Huang submitted or caused the submission reimbursement claims to Medicaid for each Medicaid recipient who attended her facility.  Huang was the sole signatory on the bank account receiving the Medicaid funds.  See PSR ¶ 8.

From August 2019 to March 2020, the defendant and her employees paid cash kickbacks to the Medicaid recipients who attended Zhiqing SADC.  The defendant and her employees kept track of each Medicaid recipient's attendance at the facility.  At the end of each month, the defendant and her employees paid the Medicaid recipients between $20 and $30 for each visit to the facility during the previous month.  Indeed, a confidential informant working at the direction of law enforcement agents attended the defendant's facility and was paid cash for each visit.  The video recordings made by the confidential informant showed other Medicaid recipients similarly being paid by the defendant and her employees.

The defendant agreed and stipulated that the loss amount to Medicaid for Guidelines purposes was more than $1 million.  The defendant also agreed and stipulated that restitution and forfeiture should be in the amount of $1,499,000 for each.

III.     Huang's Guideline Range

        The Guidelines estimate in the plea agreement and in the PSR for the sole count of the indictment are as follow:

| U.S.S.G. Description | U.S.S.G. Section | Points |
|---|---|---|
| Base Offense Level | 2B1.1; 2X2.1 | 6 |
| Loss Amount More Than $550,000 | 2B1.1(b)(1)(H) | +14 |
| Loss to Government Health Care Program More Than $1,000,000 | 2B1.1(b)(7) | +2 |
| Leader or Organizer | 3B1.1(c) | +2 |
| Acceptance of Responsibility | 3E1.1(a) and (b) | -3 |
| Total Offense Level | | 21 |

        The defendant's total offense level is 21.  Given that the defendant falls within Criminal History Category I, the range of imprisonment according to the Guidelines is 37 to 46 months.  The defendant stipulated to the above Guidelines estimate which is the same as in the plea agreement and PSR.

        The plea agreement also stated at paragraph 5(b) that the government would "make no motion for a sentence above the low end of the Guidelines as determined by the Court."  In this case that would be 37 months.

IV.     A Sentence of 37 Months Is Appropriate

                a.  Legal Standard

        In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns.  United States v. Booker, 125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a).  Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the

3

other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

Later, in Gall v. United States, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

b. Application of 18 U.S.C. § 3553(a) Factors

The government respectfully submits that the Court should impose a sentence at the low end of the advisory Guidelines range of imprisonment as set forth in the plea agreement and the PSR, which is 37 months, because such a sentence is appropriate to account for the "nature and circumstances of the offense" and to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1)-(2)(A). Such a sentence will also promote general deterrence. See id. at § 3553(a)(2)(B).

Paying health care cash kickbacks is a serious offense that targets a national program relied on by millions of Americans. Congress aptly summarized the effects health care fraud and related crimes over thirty years ago:

> In whatever form it is found . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. 95-393, pt. II, at 44 (1977). See also H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of

4

private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures.").

A sentence at the low end of the Guidelines as estimated in the plea agreement and PSR is necessary to reflect the seriousness of the offense, promote respect for the law and provide general deterrence. Huang's scheme artificially inflated demand for services offered at her facility. The fake demand caused Medicaid to lose funds and resources that could have gone to other legitimate daycare services or other Medicaid-funded programs. Moreover, Huang's scheme caused her to have an unfair competitive advantage over her competitor social adult day care facilities that met their obligations and followed the relevant rules and did not pay cash kickbacks to attendees.

Given that schemes like Huang's are typically difficult to detect and prosecute, there is a greater need for general deterrence. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Moreover, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

Congress recognized the need to afford adequate deterrence as "particularly important in the area of white collar crime" when it adopted Section 3553. See S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259. Congress rightly was disturbed that "white collar criminals often are sentenced to small fines and little or no imprisonment," and noted that, "[u]nfortunately, this creates the impression that certain offenses . . . can be written off as a cost of doing business." Id.

In adopting the Section 3553 sentencing factors, Congress emphasized the essential deterrent value of imprisoning white collar criminals, even when those criminals themselves might be unlikely to reoffend:

> The Committee is of the view that in the past there have been
> many cases, particularly in the instances of major white collar

5

crime, in which probation has been granted because the offender
required little or nothing in the way of institutionalized
rehabilitative measures . . . and because society required no
insulation from the offender, without due consideration being
given to the fact that the heightened deterrent effect of
incarceration and the readily perceivable receipt of just
punishment accorded by incarceration were of critical
importance. The placing on probation of [a white collar
criminal] . . . may be grossly inappropriate . . . in cases in which
the circumstances mandate the sentence's carrying substantial
deterrent or punitive impact.

Id. at 91-92.

Huang's punishment should take into account the need to deter other
owners of social adult day care centers from stealing from health care programs including
Medicare and Medicaid. Paying health care cash kickbacks is a serious problem that has
warranted national law enforcement attention. Although federal law provides significant
periods of incarceration for those who steal from these programs, this scheme continues at
alarmingly high rates. In determining a just sentence, the Court should consider the need to
promote respect for the health care fraud and anti-kickback laws. Here, a sentence at the low
end of the Guidelines as estimated in the plea agreement and PSR will serve to deter social
adult day care owners who, like Huang, may be tempted to place their financial interests
above all else.

V.      Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence at the low end of the Guidelines as estimated in the plea agreement and PSR, forfeiture in the amount of $1,499,000, and restitution to Medicaid in the amount of $1,499,000.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By:     /s/ William P. Campos
        William P. Campos and
        Genny Ngai
        Assistant U.S. Attorneys
        (718) 254-6104

cc:     Kevin K. Tung, Esq.
        Shengming Shi, Esq.
        Counsel for Defendant Xuan Di Huang
        (by Email)

        Jaime L. Turton
        Senior U. S. Probation Officer
        (by Email)